KATHARINE LYALL, Acting President University of Wisconsin System
Your predecessor asked on behalf of the Board of Regents of the University of Wisconsin System the following questions:
 . . . First, does increasing the dollar values of pay range minima and maxima constitute a pay range change under s. 36.09(1)(k), Stats., and thus require that the Board obtain the approval of the Secretary of the Department of Employment Relations prior to increasing the dollar values of the minima and maxima of the academic staff pay ranges, or is the increase in dollar values a compensation plan matter which the Board is authorized to take pursuant to s. 36.09(1)(j) (setting salaries) without the approval of the Secretary under the compensation plan requirements of s. 230.12, Stats.? Second, is s. 36.09(1)(k), Stats., applicable only to academic staff category or pay range structure changes which may adversely affect pay equity based on gender or race and thereby require separate annual reports to JCOER outside of the biennial compensation plan proposals to that committee?[1] *Page 139 
In your letter you indicate that the board would like to increase the pay range minima and maxima dollar values for all academic staff by one percent for the 1991-1992 fiscal year. The board did not submit this proposed action to the Department of Employment Relations secretary. The secretary, in his compensation plan recommendations to the Legislature's Joint Committee on Employment Relations for 1991-1992, made no mention of increasing the pay range minima and maxima. The secretary did state in his recommendations for the 1992-1993 fiscal year that the board may increase the pay range minima and maxima by three percent. You also note that previously the board has used sections 230.12(3)(e) and 36.09(1)(j) as its authority to effect new academic staff pay ranges without Department of Employment Relations approval. In view of recent changes in the law, the board is uncertain whether such pay range changes are compensation and salary adjustment matters not subject to Department of Employment Relations approval or are the type of"pay range" changes within the scope of section 36.09(1)(k) and therefore subject to the secretary's authority. For the following reasons, it is my opinion that changes in the minima and maxima require secretarial approval.
The questions presented involve two separate statutory procedures for preparing, approving, modifying and implementing academic staff pay rates. The University of Wisconsin staff are outside the classified service and are compensated by a separate compensation plan under section 230.12(3)(e). Under this section the compensation plan, which is based on the Board of Regent's recommendations, is proposed by the secretary and ultimately approved by the Legislature's Joint Committee on Employment Relations.
The other statutory procedure, section 36.09(1)(k) was created by the Legislature in 1985 to correct pay inequities as they existed in the University of Wisconsin compensation system. Section 36.09(1)(k) serves a dual function: One, as a *Page 140 
mechanism to establish job categories and pay ranges that are gender and race neutral; and two, as a mechanism to review any changes in the job categories or the pay ranges as part of the ongoing implementation of the University of Wisconsin academic staff salary structure. This statute requires the board to establish job categories that are race and gender neutral and assign these job categories to one of the thirteen pay ranges generated by the Hayes/Hill report. Sec. 36.09(1)(k)2. a.-d., Stats. The initial categorization and assignment by the board was to be approved by the secretary, as well as any future changes in the categorization or pay range structure. Section 36.09(1)(k) provides:
 1. The board shall, with respect to academic staff, correct pay inequities based on gender or race.
2. The board shall do all of the following:
 a. Establish and maintain job categories in which to place academic staff positions. The job categories shall be described in sufficient detail to enable the board to comply with subd. 1.
 b. Establish and maintain pay ranges, each of which has a minimum and a maximum rate of pay and, using the job evaluation system developed by the secretary of employment relations, assign the job categories established under subd. 2. a to those pay ranges. . . .
 c. Submit the job categories and pay ranges established under subd. 2. a and b to the secretary of employment relations for review and approval. In reviewing the job categories and pay ranges, the secretary of employment relations shall determine whether the board complied with subd. 1 in establishing the job categories and pay ranges.
 d. Submit a request for any change in the job categories or the pay ranges established under subd. 2. a and b to the secretary of employment relations for review and approval. In reviewing a request for such a change, the *Page 141 
secretary of employment relations shall determine whether the requested change requires the board to comply with subd. 1. The secretary of employment relations shall annually report to the joint committee on employment relations regarding any approved changes in the job categories or pay ranges.
Whether changes in the dollar values of the pay range minima and maxima are subject to Department of Employment Relations review and approval turns on the construction of section 36.09
(1)(k)2.d. Statutory construction begins with an examination of the language used by the Legislature. State v. Denter, 121 Wis.2d 118,357 N.W.2d 555 (1984). In Denter, the court held, "In construing a statute the primary source of construction is the language of the statute itself. [Case citation omitted.] If the meaning of the statute is clear and unambiguous on its face, resort to extrinsic aids for the purpose of statutory construction is improper." 121 Wis.2d at 123. See also State v.Derenne, 102 Wis.2d 38, 45, 306 N.W.2d 12 (1981).
The language in section 36.09(1)(k)2.d. is clear and unambiguous on its face. The statute specifically requires the board to "[s]ubmit a request for any change in the job categories or the pay ranges established . . . to the secretary of employment relations for review and approval." From this language, it is clear that the Legislature intended that anychange, including an increase in the dollar values of the pay range minima and maxima, be subject to review by the secretary. There is nothing in this statutory language to suggest that increasing the dollar values of the pay range minima and maxima is not a "pay range change" within the meaning of this statutory language. Quite simply, it is.
Notwithstanding the clear mandate of section 36.09(1)(k), the board suggests that the statute is ambiguous with regard to what it defines as a pay range change. The board apparently makes a distinction between a "structural change" of a pay range and the adjustment of the dollar values of a pay range minima and *Page 142 
maxima. Based on this distinction, the board interprets section36.09 (1)(k) to require Department of Employment Relations approval only for "structural changes" but not for other pay range changes. The changes in the dollar values of pay ranges are viewed by the board as equivalent to the setting and adjusting of the dollar values for the academic staff salaries which the board asserts it has authority to do without the secretary's approval.
Even if the language of section 36.09(1)(k)2.d. is assumed to be ambiguous as the board suggests, the rules of statutory construction concerning legislative intent, (see MillerBrands-Milwaukee v. Case, 156 Wis.2d 800, 811, 457 N.W.2d 896
(Ct.App. 1990), and State v. Pham, 137 Wis.2d 31, 34,403 N.W.2d 35 (1987)), compel the same conclusion. To ascertain legislative intent the Wisconsin Supreme Court has allowed the use of extrinsic materials as interpretative aids including: "the scope, history, context, subject matter and purpose of the statute."Employers Ins. of Wausau v. Smith, 154 Wis.2d 199, 226,453 N.W.2d 856 (1990). The legislative purpose in enacting section36.09(1)(k) and an example showing the consequences of an increase in the pay range minima and maxima to the University of Wisconsin pay range structure, make it clear that the board's proposed increase in the dollar values of the pay ranges constitutes a "structural change" which is subject to the secretary's independent review.
In 1985 the Legislature identified existing inequities in the University of Wisconsin compensation system. Several of the problems identified dealt with the large pay discrepancies between women and minorities in relation to the rest of the University of Wisconsin staff system, the large pay discrepancies between different positions having the same functions and duties and the lack of a salary structure which was competitive in the marketplace. In order to remedy these deficiencies the Legislature created section 36.09(1)(k) and adopted a new job categorization and compensation structure for *Page 143 
the University of Wisconsin academic staff based on the Hayes/Hill report. See 1985 Wis. Act 29, sec. 3053. See alsoAcademic Staff Title and Compensation Study, May 28, 1986. The purpose of these actions was to accomplish the legislative goals of promoting greater consistency, greater competitiveness and affirmative action in regard to academic staff salaries.
To meet the legislative goal of making academic salaries more competitive in the marketplace, thirteen pay ranges were developed under the Hayes/Hill Plan in 1985. This goal was achieved once the job titling and categorization process for academic staff positions had been completed. To create the pay ranges, Hayes/Hill determined the average market salary of every job title. Academic Staff Title and Compensation Study, May 1986 at 27-32. The average market salary became the midpoint around which Hayes/Hill built the University of Wisconsin job title salary ranges of 50 percent. Id. at 43. Thus, the minimum salary of an academic staff member for a given job title would be 80 percent of the average market salary, and the maximum would be 120 percent of the market-based average salary. The creation and implementation of these pay ranges derived from the average market salary made academic salaries competitive in the marketplace.
Because the minima, midpoint and maxima are the essence of the pay range system created by Hayes/Hill and adopted by the Legislature, it is my opinion that the board's proposed action of adjusting the dollar values of the minima and maxima not only effects a change in the pay ranges but also in the entire salary structure. An unreviewed change in pay ranges could potentially contravene the Legislature's goals of greater competitiveness, greater consistency and affirmative action. Consideration of some of the effects of an increase in the pay range minima and maxima are instructive.
Although at first blush the proposed change appears to be a simple increase in the dollar amount of the minima and maxima, major internal and external structural changes will *Page 144 
likely occur.[2] First, internally the employe at the minimum presumably would move up to the new minimum, thereby realizing a salary adjustment. The other employes do not move however because the change is only an increase in the minimum, midpoint and maximum and not an across-the-board adjustment throughout the pay range where every employe's salary would be increased accordingly. Nevertheless, the effect of this change is to compress the gap between the salary level of the employe at the minimum and the salary levels of the other employes. In addition, the gap increases between the salary levels of all other employes and the new maximum salary level. This effect also may create internal inequities within the pay range because more employes will tend toward the minimum salary level.
Second, externally, the increase may or may not be consistent with competitive market salaries. Clearly, the lack of competitiveness with the marketplace would contravene legislative intent.
Also, long-term effects could potentially occur. If several years of unchecked increases in the pay ranges are allowed, the internal and inequitable gap between different salary levels could increase and the University of Wisconsin's ability to keep its salary levels competitive with the market could be impaired. Thus, over time some of the problems that the Legislature attempted to remedy with the University of Wisconsin pay range structure could return. In view of these possible effects, it is apparent that an increase in the minima and maxima of the pay ranges is not just a salary matter, but is a structural change. *Page 145 
Because a change of this nature could potentially contravene legislative goals in establishing and maintaining the University of Wisconsin compensation structure, it is clear that a pay range change must be reviewed by the secretary under section 36.09
(1)(k)2.d.
Overall, it is my opinion that the board's proposed increase in the dollar values of the pay range minima and maxima for the academic staff is not merely a compensation plan and salary adjustment matter under sections 230.12(3)(e) and 36.09(1)(j). Rather, it is a major structural change subject to section 36.09
(1)(k) and review by the secretary. This conclusion is compelled by the clear language of section 36.09(1)(k), the legislative intent surrounding the creation of the University of Wisconsin compensation system, the importance of the Hayes/Hill pay range structure and the potential effects of a pay range increase on the entire University of Wisconsin compensation system.
In his second question your predecessor asked: "[I]s s. 36.09
(1)(k), Stats., applicable only to academic staff category or pay range structure changes which may adversely affect pay equity based on gender or race and thereby require separate annual reports to JCOER outside of the biennial compensation plan proposals to that committee?" In view of the answer to your first question, it follows that the board must comply with the provisions of section 36.09(1)(k) concerning any pay range change regardless of any other mandated reporting and review procedures.
JED:JDN
[1] 1985 Wisconsin Act 29, which inter alia created section36.09(1)(k) is at issue in litigation in two separate Dane County Circuit Court cases. Moylan, et al. v. The University ofWisconsin System, et al., Case No. 87-CV-0421 and Barbara Meyerv. University of Wisconsin-Madison, Case No. 91-0217. Because the issues in those cases are sufficiently dissimilar from the issues you raise, the policy against issuing an opinion on matters in litigation is not applicable.
[2] Although the proposed change appears simple vis-a-vis single pay range, the picture becomes slightly more complicated where there are thirteen pay ranges as in the University of Wisconsin structure. With each additional pay range, there is a need to maintain internal equity and consistency within each pay range as well as equity and consistency between pay ranges. Nevertheless, the effects of an increase in the minima and maxima of one pay range is equally applicable to all thirteen pay ranges. *Page 146