**GILMOUR MANUFACTURING COMPANY, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 7, 1998.

Decided Sept. 1, 1998.

half hour to full hour before store clerk noticed missing jewelry insufficient to sustain conviction

Joseph C. Bright, Philadelphia, for petitioner.

Carol L. Weitzel, Chief Deputy Atty. Gen., Harrisburg, for respondent.

Before DOYLE and SMITH, JJ., and LORD, Senior Judge.

SMITH, Judge.

Gilmour Manufacturing Company (Gilmour) petitions for review of an order of the Board of Finance and Revenue (Board) that denied Gilmour's petition for a refund of a portion of its 1991 corporate net income (CNI) tax. The sole question presented is whether Gilmour's 1991 CNI tax should be calculated by including sales to purchasers not located in Pennsylvania who pick up the

without evidence that other customers in store could not have stolen jewelry).

purchased property at Gilmour's loading dock in Pennsylvania and transport it outside of Pennsylvania.

I

The parties entered into the following stipulation of facts: Gilmour is a Pennsylvania corporation that manufactures lawn and garden products at its facility in Somerset, Pennsylvania and sells them throughout the United States. Gilmour generally ships its products to its customers via common carrier and pays the freight charges for shipping. Some customers pick up products directly from Gilmour's loading dock in Pennsylvania. Such sales are referred to as dock sales, and Gilmour provides a freight allowance to dock sale customers.

In 1991 Gilmour was entitled to apportionment for purposes of its CNI tax because not all of its sales were in Pennsylvania. In its timely filed 1991 CNI tax report, Gilmour excluded out-of-state dock sales amounting to $2,385,362 from its sales factor numerator, which is part of the fraction used to calculate Pennsylvania CNI tax. Out-of-state dock sales are sales to purchasers not located in the Commonwealth who transport the property from Gilmour's loading dock to an out-of-Pennsylvania location. The Department of Revenue (Department) settled Gilmour's 1991 CNI tax by including the amount of its out-of-state dock sales in the sales factor numerator, pursuant to the Department's regulation at 61 Pa.Code § 153.26(b)(2).

After Gilmour paid the tax as settled, the Department proposed an amendment to 61 Pa.Code § 153.26 at 23 Pa. B. 959 (1993). Had the amendment been duly promulgated, it would have changed the requirement that out-of-state dock sales to customers who transport property to an out-of-Pennsylvania destination be included in the sales factor numerator. Gilmour timely filed a petition for refund with the Board and claimed a refund of the CNI tax it paid in 1991 on the out-of-state dock sales in the amount of $17,-912. The Board denied Gilmour's request for relief. It then petitioned this Court, which has the broadest review in appeals from the Board because the Court functions as a trial court even though the cases are heard in the Court's appellate jurisdiction. *Buckeye Pipeline Co. v. Commonwealth,* 689 A.2d 366 (Pa.Cmwlth.1997).

For purposes of calculating Pennsylvania CNI tax, any corporation that does not transact its entire business within Pennsylvania is entitled to apportionment, as Gilmour was here, of its taxable income according to the applicable method set forth in Section 401(3)2(a)–(d) of the Tax Reform Code of 1971 (Tax Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7401(3)2(a)–(d). The method used by Gilmour required Gilmour to calculate its sales factor, which is a fraction. The numerator is the taxpayer's total sales in Pennsylvania, and the denominator is the taxpayer's total sales everywhere. Section 401(3)2(a)(15) of the Tax Code, 72 P.S. § 7401(3)2(a)(15).

II

a.

■ In this appeal, Gilmour challenges the Department's regulation interpreting the relevant section of the Tax Code, 61 Pa.Code § 153.26(b)(2), which states as a general rule: "Sales of tangible personal property are in the state in which delivery to the purchaser occurs."[1] The parties have stipulated that the products sold by Gilmour constitute tangible personal property. Gilmour argues that the regulation is inconsistent with the language in Section 401(3)2(a)(16) of the Tax Code, 72 P.S. § 7401(3)2(a)(16), which provides:

> Sales of tangible personal property are in this State if the property is *delivered or shipped* to a *purchaser, within this State* regardless of the f.o.b. point or other conditions of the sale. (Emphasis added.)

1. The following example is also provided:
A taxpayer produces beer in New York. Taxpayer sells the beer to a distributor located in this Commonwealth. Distributor sends its truck into New York to taxpayer's plant to pick up the beer and brings the beer back to its Commonwealth business location. Delivery has occurred in New York and these taxpayer's sales are in New York.
61 Pa.Code § 153.26(b)(2).

Gilmour asserts that the statutory language "within this State" must be interpreted to modify the word "purchaser" rather than the words "delivered or shipped" as the Department asserts. To interpret the statutory language other than as modifying the word "purchaser," Gilmour argues, is to contravene the remaining part of the statutory directive that attribution should be determined "regardless of the f.o.b. point or other conditions of sale" and thus to render the regulation inconsistent with the statute.

■ In considering Gilmour's argument, this Court must bear in mind that the regulation in question represents an exercise of the interpretive rule-making authority vested in the Department. Section 408(a) of the Tax Code, 72 P.S. § 7408(a); *see also Philadelphia Suburban Corp. v. Pennsylvania Board of Finance and Revenue*, 535 Pa. 298, 635 A.2d 116 (1993). The Supreme Court has established that an interpretive rule depends for its validity on the willingness of a reviewing court to say that it tracks the meaning of the statute it interprets. While courts traditionally accord some deference to the interpretation of a statute by an agency charged with the administration of the statute, the meaning of a statute is essentially a question of law for the court, and when convinced that the interpretive regulation adopted by the agency is unwise or violative of legislative intent, courts are free to disregard the regulation. *Pennsylvania Human Relations Commission v. Uniontown Area School Dist.*, 455 Pa. 52, 313 A.2d 156 (1973). *See also SmithKline Beckman Corp. v. Commonwealth*, 85 Pa.Cmwlth. 437, 482 A.2d 1344 (1984), *aff'd per curiam*, 508 Pa. 359, 498 A.2d 374 (1985).

Gilmour relies upon, and urges this Court to accept, the rationale set forth in *Florida Department of Revenue v. Parker Banana Co.*, 391 So.2d 762 (Fla.Dist.Ct.App.2d Dist. 1980). In *Parker Banana* the Florida court

determined that the tax provision at issue was adopted by the Florida legislature specifically because it established the "destination" test that Gilmour favors here. *Id.* at 762. The Florida tax statute provided that: "sales of tangible personal property are in this state if the property is delivered or shipped to a purchaser within this state, regardless of the f.o.b. point or other conditions of the sale." The court determined that the legislature's intent was to assign to Florida for tax purposes that portion of the taxpayer's net income attributable to sales of the taxpayer in the Florida market, as determined by the destination of the goods sold. *Id.* at 763. Thus the Florida court concluded that the phrase "within this state" in the provision there must refer to the word "purchaser" in order for legislative intent to be observed.

Notwithstanding the proposed amendment which was never promulgated by the Department, the Court notes that Gilmour did not argue that similar legislative intent exists here. On the contrary, Section 401(3)2(a)(18) of the Tax Code, 72 P.S. § 7401(3)2(a)(18), authorizes the taxpayer to petition the Secretary of Revenue in the event that the allocation and apportionment provisions for calculating CNI tax do not fairly represent the extent of the taxpayer's business activity in Pennsylvania. This provision does not indicate or imply that the destination of the property sold to the purchaser is the focus of the allocation and apportionment provisions but rather indicates that the business activity of the taxpayer in Pennsylvania is the focus.

Gilmour also argues that the Department recognizes the destination test in a different regulation at 61 Pa.Code § 153.26(b)(4)(i).[2] Gilmour reads this provision as interpreting the statutory language "within this State" to modify the word "purchaser" and thus contends that property is deemed to be delivered to a purchaser within Pennsylvania

---

**2.** 61 Pa.Code § 153.26(b)(4)(i) provides:

Property shall be deemed to be delivered to a purchaser within this Commonwealth if the shipment terminates in this Commonwealth, even though the property is subsequently transferred by the purchaser to another state.

*Example*: A taxpayer makes a sale of desks to a purchaser who maintains a central warehouse in this Commonwealth at which merchandise purchases are received. The purchaser reships the sale. The taxpayer's desks shipped to the purchaser's warehouse in this Commonwealth are sales in this Commonwealth.

when the shipment of that property terminates in Pennsylvania. The Court does not agree that this regulation indicates a preference or intent favoring use of the destination test. Rather this regulation is indicative of a legislative focus on the sales activity of the taxpayer in Pennsylvania, not on the purchaser or the market in which the goods are ultimately consumed or for which they are destined.

b.

Gilmour next argues that the purpose of the sales factor in the calculation for Pennsylvania CNI tax is to reflect the purchaser's location, and it cites a decision from another jurisdiction to support this argument, *Olympia Brewing Co. v. Commissioner of Revenue*, 326 N.W.2d 642 (Minn.1982). This decision is neither controlling nor persuasive. In *Olympia* the Minnesota Supreme Court determined that the statutory language of a provision also similar to but not identical to the Tax Code provision at issue was ambiguous. The court examined legislative history and published commentary but determined that these factors did not compel the interpretation advanced by the Minnesota commission and that they could be read as tending to support the interpretation advanced by the taxpayer. *Id.* at 647. The court resolved the issue by considering practical concerns but did not, as Gilmour initially contended, adopt the destination test. It determined instead that the shipment and delivery terminates for Minnesota tax purposes once it is determined where the initial purchaser is located. *Id.*

Gilmour also argues that the statutory provision in question is derived from the Uniform Distribution of Income For Tax Purposes Act (UDITPA) and that to effectuate the purposes of UDITPA, of uniformity in state taxation laws, the provision should be interpreted consistently with those of other states. This argument lacks merit for two reasons. First, other states have not in fact interpreted similar tax provisions in a uniform way. *Compare Parker Banana; Olympia Brewing.* Indeed, review of the cases cited by Gilmour from other jurisdictions construing statutes similar but not identical to that at issue here reveals no consensus of thought.[3] Second, Pennsylvania has not adopted UDITPA. *Welded Tube Co. of America v. Commonwealth*, 101 Pa.Cmwlth. 32, 515 A.2d 988 (1986). Even though Section 401(3)2(a)(16) of the Tax Code closely parallels the language used in an analogous provision of UDITPA, this circumstance in and of itself does not manifest legislative intent to enact a provision that is uniform with those of other states. Thus the requirement of Section 1927 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1927, that statutes uniform with those of other states shall be interpreted and construed to effect uniformity among those states that enact them, is not controlling here.

The Court also observes that the ease of defining where delivery occurs versus the uncertainty inherent in the taxpayer's determination of the destination of property that it relinquished at its loading dock is also a factor favoring the Department's interpretation as codified in its existing regulation. This is not to say that this factor alone is determinative or that another interpretation is inconsistent with the Tax Code or is erroneous. Nevertheless, because the Court cannot conclude that the existing regulatory interpretation is inconsistent with the Tax Code or is unreasonable, this Court will not disregard the Department's regulation in favor of another regulation not adopted by the Department, even if that interpretation may also be supported by the Tax Code and enjoys acceptance in some other jurisdictions. Accordingly, the Board's order is affirmed.

DOYLE, J., dissents.

---

3. Gilmour cited the following cases to support its position: *Texaco, Inc. v. Groppo*, 215 Conn. 134, 574 A.2d 1293 (Conn.1990); *Revenue Cabinet v. Rohm and Haas of Kentucky*, 929 S.W.2d 741 (Ky.Ct.App.1996); *Olympia Brewing; McDonnell Douglas Corp. v. Franchise Tax Bd.*, 26 Cal. App.4th 1789, 33 Cal.Rptr.2d 129 (2d Dist.1994); *Pabst Brewing Co. v. Wisconsin Dept. of Revenue*, 130 Wis.2d 291, 387 N.W.2d 121 (Wis.Ct.App. 1986); *Parker Banana*. An additional case cited by Gilmour did not reach a conclusion concerning what the appropriate test was for determining whether a sale occurred within the taxing state, but merely concluded that the sale at issue there was not taxable income. *Lone Star Steel Co. v. Dolan*, 668 P.2d 916 (Colo.1983).

## ORDER

AND NOW, this 1st day of September, 1998, the order of the Board of Finance and Revenue is hereby affirmed. If no exceptions are filed within thirty (30) days of the filing of this Order, the Chief Clerk of the Commonwealth Court is directed to enter judgment in the above-captioned matter.