STATE of Wisconsin, Plaintiff-Respondent,†

v.

Raphfeal Lyfold MYRICK, Defendant-Appellant.

Court of Appeals

*No. 2012AP2513–CR. Submitted on briefs August 6, 2013.*
*—Decided September 4, 2013.*

2013 WI App 123

(Also reported in 839 N.W.2d 129.)

† Petition for Review granted January 13, 2014.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Steven W. Zaleski* of *Zaleski Law Firm*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Thomas J. Balistreri*, assistant attorney general.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. FINE, J. Raphfeal Lyfold Myrick appeals the judgment entered on a jury verdict convicting him of first-degree intentional homicide, *see* WIS. STAT. § 940.01(1)(a), and on his guilty plea for unlawfully possessing a firearm because of his status as a previously convicted felon, *see* WIS. STAT. § 941.29(2). This appeal concerns only the homicide conviction. Myrick contends that the trial court erroneously allowed the State to read to the jury in its case-in-chief Myrick's preliminary-examination testimony in the prosecution of Justin Winston because, Myrick argues, this was prohibited by WIS. STAT. RULE 904.10 ("Evidence of statements made in court ... in connection with" "an offer to ... [the] prosecuting attorney to plead guilty or no contest to the crime charged or any other crime" "is not admissible in any ... criminal proceeding against the person who made the ... offer.").[1] We agree and reverse.

**I.**

¶ 2. Myrick and Winston were involved in the murder of Marquise Harris. Myrick admitted shooting

---

[1] Raphfeal Lyfold Myrick also complains that the trial court improperly rejected his request for an evidentiary hearing, which he argues was required by WIS. STAT. § 971.31(3) ("The admissibility of any statement of the defendant shall be determined at the trial by the court in an evidentiary hearing out of the presence of the jury, unless the defendant, by motion, challenges the admissibility of such statement before trial."). In light of our resolution of this appeal, we do not analyze the argument. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed); *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989) (cases should be decided on the "narrowest possible ground").

at Harris but claimed that he missed. He said that Winston killed Harris by riddling him with bullets from what the complaint described as "an AK47 style assault rifle." The State wanted Myrick's testimony against Winston, and sent a letter to Myrick's lawyer reciting that the State was "making the following offer of resolution based on Mr. Myrick being willing to cooperate in the prosecution of numerous cases involving Justin Winston." The offer set out its terms, as material here:

- "The State seeks debriefing and testimony in any case involving criminal conduct of Justin Winston, including the homicides of Maurice Pulley and Marquise Harris."

- Myrick "*as part of this negotiation* agrees to testify truthfully *whenever* called upon by the State in the homicides of Marquise Harris and Maurice Pulley and any other criminal conduct [Myrick] is aware of involving Justin Winston."

- "In exchange the State *will amend* the charge regarding the murder of Marquise Harris to one of Felony Murder with an underlying charge of Armed Robbery."

- "In exchange for [Myrick]'s truthful testimony . . . the State *would recommend* a period of 12 to 13 years of initial confinement in the Wisconsin State Prison."

- "The State requires a completely truthful debriefing statement of Raphfeal Myrick" to the police.

- "The State is completely free to pursue any and all investigative leads derived in any way from the proffer/debriefing, which could result in the acquisition of evidence admissible against [Myrick] in subsequent proceedings."

35

- "[I]f Mr. Myrick should subsequently testify contrary to the substance of the proffer/debriefing or any portion thereof, nothing shall prevent the State . . . or federal government, from using the substance of the proffer/debriefing at sentencing, or for any purpose at trial for impeachment or in rebuttal to testimony of [Myrick], or for the prosecution for perjury or obstructing."

- "*After* the substance of the proffer/debriefing of [Myrick] is conveyed by said law enforcement officers to the Milwaukee County District Attorney's Office . . . *it will be at the discretion of said district attorney's office . . . as to whether the above negotiation will be conveyed to you to settle the [the case underlying this appeal] short of trial.*"

- "*Should we ultimately reach a negotiation in this case* wherein Mr. Myrick agrees to cooperate with and/or testify truthfully on behalf of the State of *Wisconsin in any other criminal case that may be generated or charged based upon information provided by Mr. Myrick or of which his testimony would be deemed to be relevant and material and, thereafter if Mr. Myrick refuses to cooperate with the State and testify truthfully and/or substantially and materially alters his previously provided information/testimony to the State of Wisconsin representatives, the State reserves the right to declare any such negotiation null and void.*"

(Emphasis added.) We emphasize parts of the State's offer to Myrick because, as we show below, the letter reflects an ongoing plea-bargaining process when Myrick testified at Winston's preliminary examination, and this is the distinction between this case and *State v. Nash*, 123 Wis. 2d 154, 366 N.W.2d 146 (Ct. App. 1985), on which the trial court mainly relied in rejecting Myrick's contention that WIS. STAT. RULE 904.10 prohib-

36

ited the State's use of that preliminary-examination testimony in its case-in-chief here.

¶ 3.   The Milwaukee police "debriefed" Myrick, and, as we have seen, he also testified at Winston's preliminary examination, because, as the State told the trial court, Myrick "had a plea agreement to testify." The State does not allege either that the "debriefing" did not comply with the document's terms, or that Myrick's testimony at Winston's preliminary examination was not truthful. Myrick's further cooperation under the document, however, stopped after he testified at Winston's preliminary examination when, according to his trial lawyer's representation to the trial court, he was disturbed by a newspaper article that Myrick believed the State leaked and that Myrick believed was false. As noted, the trial court allowed the State to use Myrick's preliminary-examination testimony in its case-in-chief.

## II.

¶ 4.   A trial court's decision to admit or exclude evidence is a discretionary determination that will not be upset on appeal if it has "a reasonable basis" and was made " 'in accordance with accepted legal standards and in accordance with the facts of record.' " Whether a trial court's decision to admit or exclude evidence comports with legal principles, however, is a matter that we review *de novo*. *State v. Yang*, 2006 WI App 48, ¶ 10, 290 Wis. 2d 235, 243, 712 N.W.2d 400, 404 (quoted source and citation omitted). The trial court misapplied WIS. STAT. RULE 904.10.

37

¶ 5. WISCONSIN STAT. RULE 904.10 provides:

> Evidence of a plea of guilty, later withdrawn, or a plea of no contest, or of an offer to the court or prosecuting attorney to plead guilty or no contest to the crime charged or any other crime, or in civil forfeiture actions, is not admissible in any civil or criminal proceeding against the person who made the plea or offer or one liable for the person's conduct. Evidence of *statements made in court* or to the prosecuting attorney *in connection* with any of the foregoing pleas or offers is not admissible.

(Emphasis added.) As material, RULE 904.10 can be broken down as follows:

- "Evidence of statements made in court"
- "in connection with"
- "an offer"
- "to the . . . prosecuting attorney"
- "to plead guilty"
- "is not admissible in any . . . criminal proceeding against the person."

¶ 6. This is what we have so far: First, Myrick's "statements" at issue, his preliminary examination testimony, were "made in court." Second, these "statements" were made "in connection with" Myrick's on-going obligation to fulfill the State's conditions in connection with the State's prosecution of Winston. This leaves whether Myrick's preliminary-examination testimony was "in connection" with *his* offer to the prosecutor, rather than, as the State argues, merely "an offer by the prosecutor to Myrick." It also leaves whether under Wisconsin case law Myrick's preliminary-examination testimony was protected by WIS. STAT. RULE 904.10. We address these matters in turn.

38

*A. Offer to the Prosecutor.*

█

¶ 7.    Did Myrick make "an offer to the . . .the pros-ecuting attorney" for Myrick "to plead guilty," as required by WIS. STAT. RULE 904.10? A fair and complete reading of the State's letter shows that he did:  the State was prepared to offer Myrick a significantly reduced charge and a lenient sentencing recommendation *if* Myrick complied with what the letter required. It is not reason-able to suggest, as the State does, that the reduced charge and sentencing recommendation set out in the letter was not part and parcel of Myrick's reciprocal offer to the State; the prosecutor's letter clearly envisioned that at the end of the road the letter plotted Myrick would "plead guilty" or one of its accept-conviction vari-ants.[2] *See State v. Norwood*, 2005 WI App 218, ¶¶ 13, 20, 287 Wis. 2d 679, 689–690, 693, 706 N.W.2d 683, 689, 690–691 (The defendant's letter to the trial judge saying that he did not want to go to trial or force those whose lives he affected to endure a trial, but, rather, wanted mental-health help, was within WIS. STAT. RULE 904.10 because "the only way he could avoid trial was to enter a plea," and thus, "[a]n offer to plead guilty or no contest was therefore implicit" in the letter.). Here, the only way Myrick could get the offered sentencing recommen-dation was to plead guilty or one of the variants. Thus, Myrick's "offer to the . . . prosecuting attorney" was similarly "implicit" in the prosecutor's letter.

---

[2] A defendant may also accept conviction *via* either a no-contest plea or a plea permitted by *North Carolina v. Alford*, 400 U.S. 25 (1970) (accepting conviction despite contention of innocence), *State v. Garcia*, 192 Wis. 2d 845, 857–858, 532 N.W.2d 111, 115–116 (1995) (*Alford* pleas are permitted in Wisconsin.).

## B. *Wisconsin Case Law.*

■

¶ 8.   We have found five published Wisconsin de-
cisions that materially discuss WIS. STAT. RULE 904.10,
and the parties do not tell us of any other. We take them
in reverse chronological order.

   i.   *Norwood.* As we have seen, *Norwood* held that
the defendant's letter to the trial judge saying that he
did not want to have a trial and did not want to force
the persons affected by his crime to endure a trial was
protected by WIS. STAT. RULE 904.10. Thus, the *Norwood*
trial court erred when it received part of that letter in
evidence, but the error was harmless. *Norwood*, 2005
WI App 218, ¶¶ 13–23, 287 Wis. 2d at 690–696, 706
N.W.2d at 689–692.

   ii.   *State v. Pischke*, 198 Wis. 2d 257, 542 N.W.2d
202 (Ct. App. 1995). Pischke's letter to a police officer
seeking the officer's help in getting a plea bargain in
return for the defendant's promise to " 'tell the truth,
the whole truth, and nothing but the truth[,]' " and
implicate a co-actor, and beseeching the officer:   " 'Lets
[*sic*] work together so I can get this behind me. Talk to
the D.A. for me. All these cases in one court. One
Judgement [*sic*] day. And I'll settle these cases[,]' " was
not protected by WIS. STAT. RULE 904.10 because the
letter was neither to a "prosecutor" nor to a "court," as
the rule requires. *Pischke*, 198 Wis. 2d at 261–262,
267–268, 542 N.W.2d 202, 204, 207.

   iii.   *State v. Nicholson*, 187 Wis. 2d 688, 523
N.W.2d 573 (Ct. App. 1994). Nicholson spoke willingly
with the police after getting the required warnings
under *Miranda v. Arizona*, 384 U.S. 436 (1966), but
stopped before signing his statement to say that he
wanted to talk to a lawyer. *Nicholson*, 187 Wis. 2d at
691–692, 523 N.W.2d at 574–575. The police then al-
lowed him to talk to his mother in a private room. *Id.*,

187 Wis. 2d at 692, 523 N.W.2d at 575. After Nicholson spoke with his mother, he asked an officer to come into the room, and his mother said "that she had told her son to tell the truth." *Ibid.* Nicholson then said "that he wanted to talk about what had happened. He proceeded to tell both detectives that he was in the room when the murder occurred, but that he did not commit the actual murder." *Ibid.* Nicholson asked the detectives if he would receive " 'some slack in sentencing' " if he gave a statement. *Ibid.* The detectives "discussed with Nicholson the possibility that the district attorney would stand silent at sentencing." *Id.*, 187 Wis. 2d at 692–693, 523 N.W.2d at 575. The detectives then asked an assistant district attorney to come into the room, and she told Nicholson "that he would be charged with first-degree intentional homicide and the State would stand silent on a recommendation for parole eligibility in exchange for his truthful statement as to his involvement, if any, in the" homicide. *Id.*, 187 Wis. 2d at 693, 523 N.W.2d at 575. *Nicholson* held that "the negotiations between Nicholson and the [assistant] district attorney were not plea negotiations, but rather, constituted negotiations for a confession and, therefore, § 904.10, STATS., does not apply." *Id.*, 187 Wis. 2d at 698, 523 N.W.2d at 577. Of course, Nicholson had already confessed to the police before he spoke to the prosecutor. Thus, those statements were not made to "the prosecuting attorney" "in connection" with an "offer" to plead guilty.

  iv.  *State v. Mason*, 132 Wis. 2d 427, 393 N.W.2d 102 (Ct. App. 1986). *Mason* held that a defendant's statements made at a plea hearing that contradicted his trial testimony could not be used at the trial because they were made in connection with a withdrawn guilty plea. Thus, WIS. STAT. RULE 904.10 applied. *Mason*, 132 Wis. 2d at 428, 432–433, 393 N.W.2d at 102, 104.

  v.  *Nash.* As noted, this is the decision on which the trial court mainly relied, and on which the State also relies. Nash's journey in the system that led to

41

*Nash* started with his guilty plea to first-degree murder in connection with a "shooting death." *Nash,* 123 Wis. 2d at 156, 366 N.W.2d at 149–150. The federal courts vacated that conviction. *Id.,* 123 Wis. 2d at 156–157, 366 N.W.2d 149, 149–150. This allowed Nash to withdraw his guilty plea, and the State to try him. *Ibid.* Nash had testified at other trials as the result of the plea bargain that led to his guilty plea, and the State used that testimony to impeach what he said at his trial. *Id.,* 123 Wis. 2d at 158, 366 N.W.2d at 150. Nash contended that this was improper because, he argued, the testimony [he] provided at the previous trials was given 'in connection with' his guilty plea which was subsequently withdrawn; therefore, it is not admissible under sec. 904.10." *Id.,* 123 Wis. 2d at 158, 366 N.W.2d at 151. *Nash* disagreed, noting, significantly, that Nash gave the testimony that the State used to impeach him after the plea-bargaining negotiation process had *ended. Id.,* 123 Wis. 2d at 159, 366 N.W.2d at 151. It adopted the rationale of two federal appellate courts that determined under the then-extant Rule 11(e)(6) of the Federal Rules of Criminal Procedure that defendants' plea-bargain induced grand-jury testimony in other cases could be used against them because "exclusion of the grand jury testimony would not serve the purpose of the rule because the testimony was given after all of the negotiations had been completed and the plea agreement was formalized." *Id.,* 123 Wis. 2d at 159–160, 366 N.W.2d at 151 (adopting the rationale of *United States v. Stirling,* 571 F.2d 708 (2d Cir. 1978), *cert. denied,* 439 U.S. 842, and *United States v. Davis,* 617 F.2d 677 (D.C. Cir. 1979), *cert. denied,* 445 U.S. 697).[3]

---

[3] Rule 11(e)(6) of the Federal Rules of Criminal Procedure, as applied by the two cases on which *Nash* relied, read as follows:

Except as otherwise provided in this paragraph, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible

¶ 9. *Nash* does not apply here because, unlike the situation in *Nash*, Myrick's plea-bargaining relationship with the State was ongoing and still in flux when

in any civil or criminal proceeding against the person who made the plea or offer. However, evidence of a statement made in connection with, *and relevant to,* a plea of guilty, later withdrawn, a plea of nolo contendere, or an offer to plead guilty or nolo contendere to the crime charged or any other crime, is admissible in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel.

*United States v. Stirling*, 571 F.2d 708, 730 n.17 (2d Cir. 1978) (emphasis added), *cert. denied,* 439 U.S. 842. Rule 410 of the Federal Rules of Evidence was similar. Rule 410 has now superseded Rule 11(e)(6), which no longer exists. We emphasize "and relevant to" because that phrase is not in WIS. STAT. RULE 904.10.

Rule 410 of the Federal Rules of Evidence now reads:

(a) **Prohibited Uses.** In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions:

(1) a guilty plea that was later withdrawn;

(2) a nolo contendere plea;

(3) a statement made during a proceeding on either of those pleas under Federal Rule of Criminal Procedure 11 or a comparable state procedure; or

(4) a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea.

(b) **Exceptions.** The court may admit a statement described in Rule 410(a)(3) or (4):

(1) in any proceeding in which another statement made during the same plea or plea discussions has been introduced, if in fairness the statements ought to be considered together; or

43

he testified at Winston's preliminary examination. The following excerpts from the State's letter, which we have already set out in Part I., but repeat here for the readers' benefit, make this clear:

- Myrick "*as part of this negotiation* agrees to testify truthfully *whenever* called upon by the State in the homicides of Marquise Harris and Maurice Pulley and any other criminal conduct [Myrick] is aware of involving Justin Winston."

- "In exchange the State *will amend* the charge regarding the murder of Marquise Harris to one of Felony Murder with an underlying charge of Armed Robbery."

- "In exchange for [Myrick]'s truthful testimony . . . the State *would recommend* a period of 12 to 13 years of initial confinement in the Wisconsin State Prison."

(Emphasis added.) Accordingly, Myrick's preliminary-examination testimony, unlike the testimony the State used to impeach Nash's testimony at his trial on the murder charge, was "in connection" with the plea-bargaining process, and was, therefore, protected by WIS. STAT. RULE 904.10. *See also Nicholson*, 187 Wis. 2d at 698, 523 N.W.2d at 577 (Statements by a defendant are within RULE 904.10's prohibition if at the time the defendant subjectively expects "to negotiate a plea.") (adopting federal case law, quoted source omitted); *United States v. Herman*, 544 F.2d 791, 797 (5th Cir. 1977) ("Statements are inadmissible if made at any point during a discussion in which the defendant seeks to obtain concessions from the government in return

---

**(2)** in a criminal proceeding for perjury or false statement, if the defendant made the statement under oath, on the record, and with counsel present.

44

for a plea."), *superseded by amendment to Rule 11(e)(6) on another ground, see United States v. Keith,* 764 F.2d 263, 265 (5th Cir. 1985).

¶ 10. Although Myrick's refusal to continue to cooperate with the State following his preliminary-examination testimony permitted the State to not make either the proposed reduction in the charge or the proposed sentencing recommendation, it did not make admissible that preliminary-examination testimony because, as we have seen, the plea-bargaining process was still ongoing. The State was not yet bound to give Myrick the charge or sentencing concessions. Indeed, Myrick gave the preliminary-examination testimony at a time when the parties could still have dickered over the sentencing recommendation and even the proposed charge concession because all of that would have depended on Myrick's *value* to the State's pursuit of Winston. The trial court thus erred in allowing the State to use Myrick's preliminary-examination testimony in its case-in-chief; as *Norwood,* 2005 WI App 218, ¶ 21, 287 Wis. 2d at 694, 706 N.W.2d at 691, indicates, WIS. STAT. RULE 904.10 trumps other evidence rules if they conflict. We reverse.

*By the Court.* —Judgment reversed.